Steven G. Ford – 016492
**ALVAREZ & GILBERT, PLLC**
14500 N. Northsight Blvd., Ste. 216
Scottsdale, AZ 85260
Tel: 602-263-0203
Fax: 480-686-8708
sford@alvarez-gilbert.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| EATON VETERINARY LABORATORIES, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO MERCHANT SERVICES, LLC, a Delaware limited liability company; FIRST DATA MERCHANT SERVICES CORPORATION, a Florida corporation; WELLS FARGO BANK, NA, a national banking association; EMILY HOOVER and JOHN DOE HOOVER, husband and wife,<br><br>Defendants. | Case No. CV07-441-PHX-JAT<br><br>**FIRST AMENDED COMPLAINT** |

For its *First Amended* Complaint[1] against the above-captioned Defendants, Plaintiff Eaton Veterinary Laboratories, Inc. ("Plaintiff" or "Eaton") alleges and states as follows:

**I. PARTIES, JURISDICTION, AND VENUE.**

1. Plaintiff is an Arizona corporation with its principal place of business in Maricopa County, Arizona.

2. Defendant Wells Fargo Merchant Services, LLC ("WFMS") is a Delaware limited liability company which conducted business in Maricopa County, Arizona at times relevant to Plaintiff's claims.

---
[1] *Italicized text indicates additional, substantive text as compared to Plaintiff's original Complaint.*

3. Defendant First Data Merchant Services Corporation ("First Data") is a Florida corporation which conducted business in Maricopa County, Arizona at times relevant to Plaintiff's claims.

4. Defendant Wells Fargo Bank, NA ("Wells Fargo Bank") is a national banking association which conducted business in Maricopa County, Arizona at times relevant to Plaintiff's claims.

*5. Defendant Emily Hoover ("Hoover") is a resident of Maricopa County, Arizona, and upon information and belief is married to John Doe Hoover, who is also a Maricopa County, Arizona, resident.*

*6. Hoover and John Doe Hoover are Arizona citizens.*

*7. All acts performed by Hoover in relation to Plaintiff's claims were performed on behalf of the Hoover marital community, if any.*

8. Defendants caused events to occur in Maricopa County, Arizona, upon which Plaintiff's claims are based.

9. Jurisdiction in the Maricopa County Superior Court is proper pursuant to Article VI, Section 14 of the Arizona Constitution, and A.R.S. § 12-123.

10. Venue in the Maricopa County Superior Court is appropriate under A.R.S. § 12-401.

## II. GENERAL ALLEGATIONS.

11. Upon information and belief, WFMS is a joint venture between Wells Fargo Bank and First Data.

12. Upon information and belief, First Data provides Wells Fargo Bank with various credit card processing services.

13. Eaton is a supplier of veterinary medications and operates a veterinary pharmacy which provides veterinary medications to clinics and end-users throughout the United States.

14. A significant portion of Eaton's products are purchased by third-parties using credit cards and other electronic payment means.

15. In approximately 1995, Eaton began utilizing the services offered by Defendants and/or their predecessors to process credit card and other such transactions.

16. In connection with the foregoing, Eaton entered into a contractual relationship with Defendants (the "Agreement").

17. Upon information and belief, First Data and Wells Fargo, through WFMS *(collectively, "Defendants")*, provided services to Eaton pursuant to the Agreement.

18. Between January 2002 and April 2006, Emily Hoover, who at the time was an Eaton employee, submitted requests to WFMS for credits to her personal credit card accounts.

19. The credits requested by Hoover did not correspond to any charges paid by Hoover through the subject credit card accounts.

20. WFMS granted the credit requests and charged Eaton for the amounts thereof, which total not less than $416,299.34.

21. Between January 2002 and April, 2006, Defendants authorized and permitted Eaton's account to be debited in a total amount of not less than $416,299.34 for so-called return credits for which there were no corresponding charges.

22. At the time of each of the credit requests, Defendants knew or should have known that no corresponding charges had been paid on the credit card accounts for so-called return credits for which there were no corresponding charges.

23. At the time of each of the credit requests, Defendants had information sufficient to confirm that the requests lacked corresponding charges to the credit card accounts which were credited.

24. Up until May 1, 2006 at the earliest, Defendants failed to notify Eaton of the fact that Defendants had authorized and permitted the debiting of Eaton's account in excess of $416,000.00 for purported refunds which had not first been paid to Eaton's account.

25. Up until May 1, 2006 at the earliest, Defendants failed to ensure that Eaton's authorized agent(s) received notification of the fact that Defendants had authorized and permitted the debiting of Eaton's account in excess of $416,000.00 for purported refunds which had not first been paid to Eaton's account.

## III.  CLAIMS.

### COUNT ONE

### Breach of Contract

26. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

27. The Agreement is enforceable by Plaintiff against Defendants.

28. Plaintiff has satisfied all conditions precedent, if any, necessary to the presentment and recovery upon this claim.

29. As a result of the foregoing, Defendants materially breached the Agreement.

30. As a result of Defendants' breaches of the Agreement, Plaintiff has been damaged in an amount to be established at trial.

31. Because this claim arises out of a contract, Plaintiff is entitled to recover its reasonable attorneys' fees and costs against Defendants pursuant to A.R.S § 12-341.01 and any other applicable authority and agreement(s).

### COUNT TWO

### Breach of the Covenant of Good Faith and Fair Dealing

32. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

33. Implicit in all contracts, including the Agreement, is a covenant of good faith and fair dealing.

34. Pursuant to Defendants' covenant of good faith and fair dealing arising from the parties' contract, the Defendants owed Plaintiff a duty to refrain from acting in any way to impair the rights of Plaintiff to receive the benefits flowing from the Agreement.

35. Defendants breached their duty of good faith and fair dealing implied in the Agreement by, among other things, engaging in the acts and omissions described above.

36. As a result of Defendants' breaches of the covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be established at trial.

37. Because this claim arises out of a contract, Plaintiff is entitled to recover its reasonable attorneys' fees and costs against Defendants pursuant to A.R.S § 12-341.01 and any other applicable authority and agreement(s).

## COUNT THREE

### Negligence

38. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

39. Defendants had a duty to ensure that Eaton's account was secured and protected from third parties.

40. Defendants had a duty to prevent Eaton's account from being debited based on so-called return credits for which there were no corresponding charges.

41. Defendants had a duty to ensure that Eaton's account would not be debited for so-called return credits for which there were no corresponding charges.

42. Defendants breached their duty to Plaintiff by authorizing and permitting Eaton's account to be debited for so-called return credits for which there were no corresponding charges.

43. As a direct and proximate result of Defendants' negligence, Plaintiff was damaged in the amount of not less than $416,299.34.

## COUNT FOUR

### Aiding and Abetting

44. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

45. Hoover committed a tort which caused damages to Plaintiff.

46. Defendants knew or should have known that Hoover was not authorized to secure credits from Eaton to her personal credit card accounts.

47. Defendants knew or should have known that Hoover was not authorized to secure credits to her personal credit card accounts when there were no corresponding charges to such accounts.

48. Defendants knew that Hoover's requests and receipt of personal account credit for amounts that were not previously charged was tortious.

5

49. Defendants substantially assisted Hoover in engaging in the tortious conduct described herein, whereby Hoover obtained Plaintiff's money as a result of Defendants allowing Hoover to receive credits on her personal accounts in amounts for which there were no corresponding charges.

50. As a result of Defendants' conduct in aiding and abetting Hoover's actions, Plaintiff has suffered and continues to suffer damages.

51. Defendants' actions and omissions as alleged above were in conscious disregard for the significant harm to Plaintiff, and their conduct was so improper, oppressive, outrageous, and intolerable, so as to warrant the imposition of punitive damages against Defendants.

## *COUNT FIVE*

### *Conversion*

*52. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.*

*53. By engaging in the acts alleged above, Hoover exercised wrongful control and dominion over Plaintiff's funds and assets, without Plaintiff's knowledge or consent.*

*54. As a result of Hoover's knowing and intentional conversion of Plaintiff's funds and assets, Plaintiff has suffered, and continues to suffer, damages.*

*55. Hoover's misconduct as alleged above was in conscious disregard for the significant harm to Plaintiff, and her misconduct was so improper, oppressive, outrageous, and intolerable, so as to warrant the imposition of punitive damages against her.*

## *COUNT SIX*

### *Fraud*

*56. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.*

*57. Hoover affirmatively failed to disclose to Plaintiff material facts regarding the nature of the various credits she effectuated her personal accounts and, in turn, the resultant charges to Plaintiff's accounts.*

*58.     Among other things, Hoover failed to inform Plaintiff that credits were being made on certain accounts, and against Plaintiff's account, for which no corresponding charges had been made.*

*59.     Hoover engaged in the foregoing material omissions made those representations with knowledge that they were material to Plaintiff's business and with knowledge that in so behaving, she was actually converting Plaintiff's money.*

*60.     Plaintiff was unaware that of Hoover's material omissions, and Plaintiff reasonably relied upon the absence of Hoover's disclosure of the underlying, material facts, to Plaintiff's detriment*

*61.     Hoover's omissions resulted in Hoover being able to retain employment with Plaintiff for a period of time and thereby perpetuate her fraudulent scheme.*

*62.     As a result of Hoover's fraudulent omissions and representations, Plaintiff has suffered, and continues to suffer, damages.*

*63.     Hoover's misconduct as alleged above was in conscious disregard for the significant harm to Plaintiff, and her misconduct was so improper, oppressive, outrageous, and intolerable, so as to warrant the imposition of punitive damages against her.*

WHEREFORE, Plaintiff prays for judgment against Defendants on its claims, as follows:

A.  For damages against Defendants *WFMS, First Data, and Wells Fargo Bank (collectively, the "Bank Defendants")* for their breaches of the Agreement, in an amount to be established at trial but not less than $416,299.34;

B.  For damages against *the Bank* Defendants for their breaches of the covenant of good faith and fair dealing, in an amount to be established at trial but not less than $416,299.34;

C.  For damages against *the Bank* Defendants for their breaches of duty, in an amount to be established at trial but not less than $416,299.34;

D.  *For damages against Hoover and the Hoover marital community in an amount to be established at trial but not less than $416,299.34;*

E. For punitive damages against *all* Defendants, *including Hoover*, in an amount consistent the facts and with Arizona law;

F. For pre- and post-judgment interest at the highest legal rate until paid in full;

G. For Plaintiff's attorneys' fees and costs, pursuant to A.R.S. § 12-341.01 and any other applicable authority or agreement(s).

H. For any further such relief in Plaintiff's favor as the Court deems appropriate under the circumstances.

DATED this 4th day of October, 2007.

**ALVAREZ & GILBERT, PLLC**

By s/Steven G. Ford
Steven G. Ford
14500 N. Northsight Blvd., Ste. 216
Scottsdale, AZ 85260
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2007, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

John C. West, Esq. – jwest@jsslaw.com

By: s/Steven G. Ford

8